Allen, J.
The plaintiff in error, whom for convenience we shall call the defendant during the course of this opinion, claims that various prejudicial errors occurred in the trial below, and that the specific errors áre as follows: first, error in the admission of incompetent evidence and failure of the court to limit the scope and effect of evidence received for specific purposes. Second, misconduct of the prosecutor in argument to the jury. Third, error of the court in refusing to give, after argument, defendant’s request No. 6. Fourth, overruling defendant’s motion for new trial, and error in consideration of the proof offered by defendant in support of his motion for new trial. Fifth, error in the court’s charge after argument.
Taking up these objections in their order, we shall first consider the question of error in the *479 admission of evidence. The defendant claims that numerous prejudicial rulings were made by the court in the admission of testimony. All the testimony claimed to have been erroneously received consists of evidence of alleged similar offenses committed by the defendant previous to the date of the offense charged in the present indictment. The court admitted this testimony as bearing upon the question of intent, and in delivering the general charge limited the consideration of this evidence by the jury to the question of intent. The defendant does not contend that evidence of previous similar offenses is not admissible in bribery cases, and indeed in this state it is well established that such evidence is admissible as tending to show a corrupt course of conduct in public office.' (State v. Davis, 90 Ohio St., 100, 106 N. E., 770.) He urges, however, that this testimony was inadmissible for the following reasons: (a) That some of the testimony was entirely incompetent as tending in no way to bind the defendant, (b) That this testimony to have been admissible at all must have proved each similar offense beyond a reasonable doubt; that the offenses in question were not proved in the degree required; and that the court should therefore have excluded the evidence of its own motion, (c) That some of this testimony did not consist of evidence of similar - offenses. ■
A group of the defendant’s objections under this head relates to testimony given with regard to transactions and conversations with a certain federal prohibition officer by the name of D. M. Brown, who held office in Youngstown during all the period in question.
*480 The defendant urges that the transactions and conversations with Brown, which were given in evidence at the trial, did not occur in the presence of Scott, and therefore were inadmissible. Martin Carney, for instance, was permitted to testify to certain matters pertaining to the release of money deposited as bail for Paul Kurek upon the order of Federal Officer D. M. Brown, and the state was permitted to cross-examine Federal Officer Brown as to the release of the Kurek bail money upon Brown’s order to Carney. Kurek was one of the three partners whose speakeasy was alleged to be protected by Scott.
One Daniel Maganetti, a police officer of Youngstown, was permitted by the court to testify -that an Italian, LaJutta, was arrested and brought to the police station by Federal Officer Howard and City Officer Albaugh, and that the prisoner, Federal Officer Howard, and defendant Scott, went into a separate room and closed the door, and that Scott within a few minutes came out and instructed Maganetti to release the prisoner by order by Federal Officer Brown.
The court allowed one Fisher, a police officer, to testify that he presented to Federal Officer Brown (not in the presence of Scott) certain evidence tending to establish the unlawful sales of liquor at certain cafes operated by Malovich, Bezzak and the “Inn Hotel.” This evidence was presented in the form of conversations at which the defendant had not been present.
This evidence in regard to conversations with and transactions with Federal Officer Brown obviously was not admissible, unless there was some collusion, conspiracy, or working arrangement between Federal Officer Brown and the defendant.
*481 It was the contention of the state upon the trial that the defendant did have an arrangement with Federal Officer Brown, and that, as a result of such understanding, Brown permitted Scott to extend his favors to such bootleggers as Scott desired to protect. The state claimed that in fact Scott did extend protection to certain bootleggers, knowing that Brown, through the alleged understanding, would not interfere with the illegal operations.
The territorial jurisdiction of Brown and the defendant was coincident and concurrent. Without going into the details of the record, which covers over 1,800 pages, it suffices to say that the court finds there was prima facie evidence of a conspiracy between Brown and Scott to protect bootleggers in the city of Youngstown, that the evidence complained of was relevant, and was therefore rightly admitted.
The defendant also claims that certain testimony was admitted which had' no bearing on the case; that a certain George Matavina, for example, was permitted to testify that he at one time went to Scott’s office, showed Scott pictures of a fancy clock, and that Scott remarked he would like to have one like it. Matavina then testified that he secured one of the clocks and gave it to Scott.
The defendant claims that there was no testimony in the case that the clock was solicited by Scott or received by him in any corrupt attempt to influence him in his official duty. However, the record shows (page 770) that Matavina went to the defendant’s office before the clock incident to secure a soft drink license. The defendant said, “I cannot give you a license because your place has been *482 pinched.” He told Matavina to come back later. Matavina did return and then secured a license. Shortly after securing the license Matavina gave the defendant the clock in question.
The court holds that this transaction was compe-, tent to go to the jury as being some evidence that an understanding of mutual favors existed between Matavina and the defendant.
The defendant also objects to the testimony of a certain Mrs. Cooper, called in rebuttal as a witness for the state. She gave evidence to the effect that she had gone to Scott’s office, and requested Scott to indorse a note for her to enable her to borrow $100. She said that the witness Malovich, who was one of the principal bootleggers alleged to have been protected by Scott, was in the office at the time, and volunteered to loan Mrs. Cooper the $100, which he afterwards did. This testimony of Mrs. Cooper’s was in rebuttal of previous testimony of the defendant. Malovich had testified that Scott took him to Mrs. Cooper’s home, and prevailed upon him to loan Mrs. Cooper $100. Scott denied this. The court holds that this testimony of Mrs. Cooper’s was entirely admissible in rebuttal of the denial of Scott.
The defendant complains that totally irrelevant testimony was admitted with regard to his having gone out on parties with girls from the Hippodrome. An examination of the record shows that this evidence was drawn into the case through a denial by Scott that he knew that Kurek was selling liquor illegally. In the course of the cross-examination upon that point the defendant was asked whether he remembered an occasion when he asked Sam Malovich *483 for some groceries to take out to the Howard cottage, and told Malovich that he was going to have a party of some girls from the Hippodrome. Defendant denied that he did. The court finds no abuse of discretion of the trial court in its conduct of the cross-examination with regard to the admission of this testimony.
The defendant also lists by page testimony which he claims was objectionable. The court has carefully examined all the pages cited, and fails to find reversible error in the admission of any of the testimony questioned.
Testimony, for instance, was given by one of the police officers that Scott, Danks and Brown were present when liquor was found at Kurek’s place, and that no arrest was made of Kurek at the time. Defendant attacks this testimony, but it is plainly competent.
Some testimony was elicited from the defendant with regard to the amount of money he spent for two automobiles during this period. This evidence was objected to as being entirely irrelevant. However, evidence was offered by the state to the effect that upon two occasions the defendant solicited definite sums of money from the Kurek partnership saying that he needed a new car. This evidence, therefore, was properly allowed.
The defendant also objects to the testimony of Sam Malovich that he, Malovich, loaned $100 to Mrs. Cooper upon the request of the defendant above referred to. Malovich was a bootlegger, and, if his evidence be believed, was the go-between between Scott and the Kurek partnership. This testimony was admissible as tending to show the kind of money trans *484 actions which were going on between Malovich and the defendant, at the time when Malovich and his friends were alleged to be receiving police protection.
One Bochnek and his wife stated that the defendant offered protection to Bochnek in selling liquor, if he would divide the profits with him. This evidence was clearly competent, and if impeached by the testimony of certain police officers, as the defendant claims, its weight was for .the jury.
The defendant claims that the court should of its own motion have excluded a large portion of this testimony on the ground that it was not proven beyond the existence of a- reasonable doubt. The court later holds in this opinion that the rule upon that point in Baxter v. State, 91 Ohio St., 167, 110 N. E., 456, is no longer law in this jurisdiction.
A careful examination of the briefs and the record upon the points raised shows, moreover, that even under the Baxter case rule the evidence was by no means so trifling as to require the court to refuse it or to withdraw it from the jury. It was plainly a question for the jury whether or not these matters had been established beyond a reasonable doubt.
A more serious legal question is raised by the testimony of Katherine Orchowsky. Katherine Grchowsky was the daughter of a man who wished to conduct a soft drink parlor. She was permitted by the court to testify to the effect that the defendant with other officers had raided the house where she was living, and that after the raid defendant •stated to her that if she would go out riding with him and “show him a good time” he would per *485 mit her father to sell raisin jack. Miss Orehowsky also stated that on one occasion she went, together with another witness by the name of Ginn, to the city building to secure from the mayor a license to sell soft drinks, that she entered Scott’s office, that the defendant shut and locked his office door, not permitting the witness Ginn to accompany her into his office, and that at the time the defendant made improper proposals to her.
The court limited the use Avhich the jury was to make of this testimony to the question of intent, instructing the jury that they were to consider the evidence for the purpose of inquiring whether the corrupt intent charged in the indictment existed, and for no other purpose.
The defendant claims that this evidence was not competent to prove intent as the. transaction did not constitute a “similar offense,” in that it did not comprise a solicitation of “any valuable or beneficial thing,” under Section 12823, General Code, and therefore did not include an essential element of bribery within the Ohio statute.
There is some authority in the law to the effect that almost anything may be the consideration of a. bribe so long as it is of sufficient value in the eyes of the person bribed to influence his official conduct. (4 Buling Case Law, 179,. Section 6.) The state in this case argues that when the defendant told Katherine Orchowsky he would permit her father to sell raisin jack if she would “show him a good time” he was soliciting her to betray her virtue, and that therein he was asking her for something of value.
*486 The pertinent portions of Section 12823, General Code, read as follows:
“Whoever, being * * * a state or other officer, * * * solicits or accepts any valuable or beneficial thing to influence him with respect to his official duty, or to influence his action, vote, opinion or judgment, in a matter * * # that might legally come before him, shall be imprisoned in the penitentiary not less than one year nor more than ten years.”
To constitute a solicitation of a bribe, then, the thing solicited must be either valuable or beneficial. It need not be property, but may be some act. Caruthers v. State, 74 Ala., 406, holds, in the first proposition of the syllabus:
“Under the statute denouncing the offer to bribe a juror, by the promise of ‘any gift, gratuity, or thing of value’ (Code, Section 4118), a conviction may be had on proof of an offer by the defendant, while on trial for another offense, to give his labor or services to one of the jurors, if he would procure an acquittal; as, to ‘chop cotton for a week, if he would clear him.’ ”
When the defendant asked Katherine Orehowskv to go riding with him and “show him a good time,” was he asking a valuable thing? There is evidence tending to show that he was asking a thing valuable to himself. It is inconceivable, unless he considered it valuable, that he should offer official protection for the thing he was asking.
Webster’s International Dictionary gives the following definition of value:
“The property or aggregate properties of a thing by which it is rendered useful or desirable.”
*487 That the thing the defendant asked on this occasion was desirable to himself, there is ground to believe from the evidence. Since he asked for it, and offered in return for it official protection, the consideration evidently was desirable to him.
Does the fact that the defendant asked for something valuable to himself, on the facts, and within Webster’s definition, constitute a solicitation of something “valuable,” within Section 12823, General Code?
It would defeat the plain purpose of the statute, if the meaning of the word “value” were to be so strictly limited that valuable things offered or received in cases of alleged bribery or solicitation of bribery should be held to be only things which are very generally desirable. It is impossible, of course, to establish value which is universal. On a desert island gold has no value, because no one desires it. Eaw blubber has value as food at the north pole, but none in Ohio, because no one desires it. The test of the value must necessarily be the desire of some person or persons, not necessarily of most persons or all persons, for the thing in question.
The court holds that the defendant solicited “a valuable thing” of Katherine Orchowsky, within the meaning of the statute.
The defendant also questions whether the Orchowsky incident, if it occurred, constituted an offense similar to that charged in the indictment upon which defendant was tried. In State v. Reineke, 89 Ohio St., 390, at page 391, 106 N. E., 52, L. R. A., 1915A, 138, in the opinion, it is said:
“Where scienter or guilty knowledge is a necessary element of the offense, other criminal acts may *488 be shown, of the same or similar nature, as in the sale of adulterated foods.”
Volume 3, Greenleaf on Evidence (16th Ed.), Section 15, reads as follows:
“In the proof of intention, it is not always necessary that the evidence should apply directly to the particular act, with, the commission of which the party is charged; for the unlawful intent in the particular case may well be inferred from a similar intent, proved to have existed in other transactions done before or after that time.”
In Stephens’ Digest of Evidence, p. 62, it is said:
“When there is a question whether a person said or did something, the fact that he said or did something of the same sort on a different occasion may be proved if it shows the existence on the occasion in question of any intention, knowledge, good or bad faith, malice, or other state of mind or of any state of body or bodily feeling the existence of which is in issue or is deemed to be relevant to the issue.”
It is noteworthy in these authorities that the term used with regard to the offenses of which evidence may be given in a case of this character as having been committed by the defendant previous to the date charged in the indictment is “similar, of the same or similar nature,” or “of the same sort,” that is to say, not of the “identical” nature. It is evident that a distinction is drawn in the authorities between offenses which resemble that charged in the indictment in question, and those which are actually identical in their nature with that charged in the indictment. Webster’s International Dictionary defines “similar” as follows:
*489 “Nearly corresponding; resembling in many respects; somewhat like; having a general likeness.”
Defendant claims that evidence of this solicitation of Katherine Orchowsky was inadmissible, for the reason that solicitation of an improper relationship is not an offense similar to solicitation of money or property. That this transaction resembled the other transactions charged against the defendant is evident. This is shown by the fact that there is evidence tending to show that his motive and intent in these various incidents were identical. He intended to prostitute his public trust in order to secure something which he personally desired. The intent of the defendant when he approached Katherine Orchowsky, if the record be believed, was identical with the intent which he had when he solicited money from the bootleggers who figure so prominently in the record. The only dissimilarity in the cases arises, not in the intent of the defendant, but in the character of the consideration which he was to receive. From the standpoint of what the girl was to give, there was a dissimilarity. From the standpoint of what the defendant was to give, which was to protect her father in bootlegging, the transaction was identical with the numerous other transactions set forth in the record.
' Greenleaf’s definition of the reason for admitting evidence of other similar crimes may prove a guide in the decision of this question. He says:
“The unlawful intent in the particular case may well be inferred from a similar intent, proved to have existed in other transactions.”
If an unlawful intent to betray a public trust can be proved by soliciting money in return for official *490 favor, may not an unlawful intent to betray the same public trust be proved by the same kind of offer of official favor in any case where the offer is made for a consideration, irrespective of the exact character of the consideration? To prove guilty intent, it is just as relevant to establish that the defendant said he would protect a man in bootlegging if his daughter “showed him a good time” as it is to establish that he said he would protect a man in bootlegging if he gave him $1,000. This was evidence of a similar transaction directly tending to show the corrupt purpose of the defendant, and for that reason the court holds that it was competent.
The defendant claims, second, that his case was prejudiced at the trial by the alleged improper argument of the prosecuting attorney, and gives numerous instances of what he claims to be objectionable statements; objectionable either because of alleged misstatements- of fact, or because of improper comment. Several of these statements the court holds to have been fair comments upon the evidence, and in themselves not objectionable. We do not quote them here in detail, because to only two of these statements of the prosecutor was objection made and exception taken at the time of their utterance.
The general rule is that improper remarks to the jury during argument should be objected to immediately. (State v. Young, 77 Ohio St., 529, 531, 83 N. E., 898.) If the objection is to the entire argument it will be unavailing where parts only thereof are improper. The objection “must be made when the objectionable language is used and the exception must be taken when the ruling is procured.” (38 *491 Cyc., 1508.) It is true that it is the court’s duty sua sponte to interpose if counsel abuse the right of argument to the prejudice of the other side, and failure to do so, though not requested, is ground for a new trial. Hayes v. Smith, 62 Ohio St., 161, 56 N. E., 879.
However, improper statements by the prosecuting attorney in his argument, if not objected to at the time, are not ground for reversal unless so flagrantly improper as to prevent a fair trial. Davis v. State, 20 Ohio Cir. Ct. R., 430.
In the present case, after careful consideration of the argument of the prosecutor, in the light of the record, the court does not consider the statements made which are urged as improper, and to which objection was not made at the time, to be so flagrantly unfair as to have prevented a fair trial, and for this reason the defendant’s first objection is considered untenable as to the statements to which no exception was taken.
The only two instances in which objection and exception were taken at the time to remarks of counsel are as follows: The prosecutor in his argument said to the jury:
“Eager and anxious eyes are watching you, ladies and gentlemen of the jury.”
Objection was made by the defendant, and the court then said:
“The public are watching this case for the sole purpose of seeing that justice is administered, and you are only concerned with that phase of the public interest.”
The court considers that any error in this statement, if error existed, was cured by the admonition of the trial court.
*492 In concluding Ms argument, the prosecutor made the following statement:
“Ladies and gentlemen, I beg in closing, I beg you in the name of the state of Ohio, and I ask you in the name of this great city of ours, and I ask you in the name of every law-abiding citizen, and I ask you in the' name of every man, woman and child in Mahoning county, and I ask you in the name of everything that is decent and that is honest and that is clean to set your stamp of disapproval upon such conduct as you have seen here by your verdict, with such force that will put an end to official corruption in this city and county for years to come.”
This statement was objected to by the defendant, the objection was overruled by the court and exception was taken.
The court finds no reversible error in this language of the prosecutor, particularly in view of the charge of the court upon the argument of counsel, which reads as follows:
“This is a case of unusual magnitude. It is not surprising therefore, that the attorneys in their anxiety and zeal should have urged upon you some topics and considerations which have no pertinence to the case, and which should have no influence upon the minds of the respective jurors when they come to determine the case. The attorneys at great length discussed and have had full freedom of argument before you upon every question of fact, and before the court on every question of law. It was their privilege to analyze the evidence and to arraign the conduct of the defendant and all others concerned in the transactions that have been in *493 vestigated, and to characterize and impugn their motives, if the evidence justifies it, to assail the credibility of the witnesses who were either directly or indirectly impeached, and to give full play to their wit and imagination in the illustration and adornment of their argument; but this does not mean that they had the right to make statements of fact not sustained by the evidence, or to urge upon you consideration outside of the case. Tou must exclude from your minds promptly and fearlessly and absolutely all impressions and convictions which may have found lodgment there, either consciously or unconsciously, that are not made by the evidence and the law. When you come to the consideration of this ease on its merits you should ,not permit suggestion or statements or allusions to sympathy or prejudice, whether race or nationality nor what it may be, nor to politics, to have any weight or influence on your mind.”
For his third ground of objection, the defendant cites the fact that in the trial below the court refused to give the jury after argument the defendant’s request No. 6, which reads as follows:
“I say to you, as a matter of law, that a public official has as good right to receive presents as any person in private life and the receipt of the same by this defendant is not in and of itself bribery unless you shall find that such presents were either solicited or received by him for the purpose and with the intent to influence him with respect to his official duty.”
In this refusal the court did not err. It is, of course, true that there is nothing criminal per se in the acceptance of presents by public officials as *494 private individuals. But a public official has no right to receive presents from persons dealing with him in his official capacity for services rendered in that capacity. It was a question, under the circumstances, of which evidence was given in this case, whether Scott had as good right to receive the presents he did receive as a person in private life. It may be questioned, for instance, whether the receipt of a license to sell soft drinks, which had formerly been refused, and the giving of an expensive clock to the official who had refused the license by the pen-son who received the license, so soon after the receipt of the license as to justify the inference that it was all the same transaction, there being no evidence of any other reason for the gift at that time, place the transaction upon exactly the same plane as the giving of gifts in friendship between private individuals. As expressed, the request to charge did not fairly and accurately represent the facts in this case, and the court was therefore justified in refusing the request.
.“Instructions on issues not raised by the evidence, or directly opposed to the evidence, are erroneous and properly refused, although correct as abstract propositions of law.” 38 Cye., 1618-1620, and cases cited.
The defendant claims, fourth, that the court erred in failing to grant a motion for a new trial.
The application for a new trial was based upon the alleged statements of a man who was said by three witnesses to have stated to them that he was John Tomsky. Tomsky was a material state’s witness at the trial. The witnesses testified that this *495 man said to them after the trial: “They make him tell lies; Scott good man; story all wrong.”
None of the witnesses who testified to this incident was acquainted with Tomsky. There was not a syllable in the record to establish that the man who made these statements resembled Tomsky. The record does not show that the defendant made any effort to get a statement from Tomsky or to bring him before the court as a witness.
Under these circumstances, there was no proof before the court that the man who made the statements in question was Tomsky, and therefore it. cannot be said that the trial court exceeded its discretion in overruling the motion for a new trial.
Turning to the last claim of error urged by the defendant in this case, we shall now consider the court’s charge after argument. That portion of the charge objected to by the defendant is as follows:
“In determining the intent of the defendant you may consider the testimony as to other alleged solicitations or acceptance of bribe by the defendant, if any you find from the evidence has been made and accepted. The court instructs and cautions the jury that you may only consider the evidence touching the alleged solicitation or acceptance of money or thing of value, or a beneficial thing at other times than charged in the indictment, for the sole purpose of enabling you to determine the intent of the defendant at the time at which it is claimed he solicited the bribe of Tomsky, or accepted the bribe from Tomsky and Malovich, as set forth in this indictment.”
*496 Counsel for the defendant claims that this charge is erroneous, in that the court did not therein instruct the jury that evidence of other crimes admitted for the purpose of proving intent should be considered only when such evidence proves such other crime or crimes beyond a reasonable doubt.
In support of his contention, counsel for defendant cites Baxter v. State, 91 Ohio St., 167, 110 N. E., 456, the second proposition of the syllabus of which reads as follows:
“Where evidence of other offense;» of a similar character is competent to prove intent, and the accused has not theretofore been convicted of such offenses, the burden is upon the state to prove that the accused is guilty of such other offenses by the same degree of proof, required in all criminal cases.” The court did, however, say to the jury in its special charge, the following:
“Each fact, if any, in this case, which you find established beyond the existence of a reasonable doubt, can only be used by you in establishing guilt after first finding that fact to be irreconcilable with innocence.”
’ Only a general exception was taken to the general charge of the court. The charge as first given might have been erroneous, within the ruling of the Baxter case, but as supplemented by the later charge quoted above the error was cured.
The fair meaning of the sentence above, in connection with the rest of the charge, is that only those facts can be used to establish guilt which are found by the jury to be irreconcilable with innocence. In the final state of the charge, therefore, the failure to give the instruction for which the defendant now *497 contends was only an omission upon the part of the court.
Under the long-established rule of Ohio, when the court omits to charge upon a feature of the law applicable to the evidence, the defendant, in order to predicate reversible error upon the court’s omission, should call the court’s attention to that point and make a specific request for such instructions. Since such action was not taken in this case, the objection in this court is not tenable. State v. McCoy, 88 Ohio St., 447, 103 N. E., 136.
Moreover, upon still another ground, the court holds this objection untenable. This ground involves the soundness of the ruling in the Baxter case, supra, as to the necessity of the court’s charging that evidence of other similar offenses, when admissible to prove intent, must be established beyond a reasonable doubt, before the jury can consider the same.
Is the rule in the Baxter case based upon sound reason? It has long been the general rule that a conviction is warranted if on the whole evidence the jury are satisfied beyond a reasonable doubt that every material element charged in the crime exists, and that the defendant is guilty of the crime charged. In other words, it is the holding that the state need not establish each particular fact of the case beyond a reasonable doubt, if it establishes beyond a reasonable doubt the existence of every material fact alleged in the indictment and the guilt of the defendant. Breck v. State, 4 Ohio Cir. Co. R., 160, affirmed by the Supreme Court without report, 21 Wkly. Law Bul., 204; Lowther v. State, 18 Ohio Cir. Ct. R. (N. S.), 192; Murray v. State, 23 Ohio Cir. Ct. R. (N. S.), *498 508; Commonwealth v. Cunningham, 104 Mass., 545, and People v. Stanley, 101 Mich., 93, 59 N. W., 498.
The evidence for the prosecution should not be held insufficient solely because some of it is, when disconnected, weak or inconclusive, for taken together it may satisfy the jury beyond a reasonable doubt of the guilt of the defendant of the crime charged. 16 Corpus Juris, 780, note 99 and note 6, and cases cited.
If testimony with regard to other similar crimes is to be dealt with as other evidence, it falls under this general rule and need not be discarded simply because particular items tending to prove other similar offenses are not established beyond a reasonable doubt, so long as the jury, from the whole testimony, are convinced to a moral certainty of the guilt of the defendant of the crime charged and of the existence of every material element necessary to establish that guilt.
That this common sense view of the situation obtains in certain other American jurisdictions is shown by the fact that the case of Baxter v. State, supra, is the leading case which lays down the doctrine here discussed, and is by no means universally followed in its exact terms. While the Baxter case is frequently cited, the degree of proof required in this class of testimony is held on- excellent authority to be positive or substantial, but not “beyond a reasonable doubt.” State v. Hyde, 234 Mo., 200, 136 S. W., 316, Ann. Cas., 1912D, 191, holds that—
“Where, for any reason, evidence of any other crime is admissible, there must be substantial proof that the other crime has been committed.”
And also that—
*499 “Where evidence of other crimes is admitted, it need not prove beyond a reasonable doubt that the other crimes were committed, yet, before such evidence is admitted, the trial court should satisfy itself, either from a preliminary hearing or from offers of proof, that the evidence .substantially establishes the other crimes.”
The People of the State of Illinois v. Dougherty, 266 Ill., 420, 107 N, E., 695, a recent decision of the Supreme Court of Illinois, holds as follows in the seventh proposition of the syllabus:
“Where proof of other crimes similar to the one charged is admitted for the purpose of showing intent and guilty knowledge, it is not necessary that such other crimes shall be established beyond a reasonable doubt in order to authorize a conviction for the crime charged, provided there is other sufficient evidence.”
In this Illinois ease the defendant was charged with forging orders drawn upon the treasurer of the board of school inspectors of the city of Peoria. The state offered testimony tending to show that other forged warrants of the same kind had been issued by the defendant under similar circumstances, and it was these other alleged offenses that the court held need not be established beyond a reasonable doubt.
Now, the intent is one of the elements that must be established to prove the crime of bribery. The testimony as to other similar previous offenses committed by the defendant, not too remote in period of time, is admissible in a bribery case to prove intent. Intent, the ultimate material -fact of intent, must be established beyond a reasonable doubt, and the court *500 must so charge. To hold, however, that other similar crimes which tend to establish intent must be proved beyond a reasonable doubt is to extend the rule far beyond all reason. If carried to its logical conclusion such a doctrine would require that every probative fact offered in the case be established beyond a reasonable doubt, which is certainly not the law.
Since the rule as announced in the second propo? sition of the syllabus of the Baxter case, supra,, is opposed to the general rule as to the degree of proof-required for mere probative facts in criminal cases, and opposed to eminent authority in judicial decisions in the ÍFnited States, this court disapproves and overrules the second proposition of the syllabus in Baxter v. State, 91 Ohio St., 167, 110 N. E., 456.
Finding no reversible error in the record, the court must affirm the judgment.

Judgment affirmed.

Marshall, C. J., Wanamaker and Day, JJ., concur.